# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION–FLINT

**IN THE MATTER OF:**

DONNA ELAINE MORSE,            Case No. 15-31178-dof
    Debtor.                                 Chapter 7 Proceeding
                                           Hon. Daniel S. Opperman
_____/

DANIELLE L. GROCE,
    Plaintiff,

v.                                                  Adversary Proceeding
                                                 Case No. 15-3137-dof

DONNA ELAINE MORSE,
    Defendant.
_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Donna Elaine Morse is the Debtor in the Chapter 7 bankruptcy case underlying this adversary proceeding. Plaintiff Danielle L. Groce, a creditor in that case, filed an adversary complaint alleging Defendant's debt to her is not dischargeable per 11 U.S.C. 523 (a)(6). Before the Court are motions for summary judgment by each party.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

### Findings of Fact

Defendant's debt to Plaintiff arises from a judgment Plaintiff obtained for violations of her civil rights under Michigan's Elliott-Larsen Civil Rights Act. At all times relevant Defendant, with her husband, owned all shares of a corporation that operated a bar in Flint, where Plaintiff worked.

Defendant's son worked at the bar as well and was Plaintiff's supervisor. Plaintiff based her civil rights claim on allegations she was sexually harassed and discriminated against while she worked at the bar. While he was Plaintiff's supervisor, Defendant's son sexually harassed Plaintiff on multiple occasions. Eventually, he fired Plaintiff, leading to her state court action.

That case went to trial in June 2013 and a jury returned a verdict in Plaintiff's favor, entering a judgment against Defendant and her son for a total of $64,030.96. On its verdict form, the jury found that Defendant and her son terminated Plaintiff's employment because of Plaintiff's sex or because of sexual harassment. The jury also found Plaintiff was terminated from her job in retaliation for her complaining about harassment and discrimination. The verdict form does not specify whether Defendant's liability was direct or vicarious and does not state that Defendant engaged in intentional, willful, or malicious conduct toward Plaintiff.

Defendant filed a motion for judgment notwithstanding the verdict, which the state court denied. In its opinion denying that motion, the state court noted that Defendant's conduct was put before the jury, but did not describe that conduct or confirm any specific jury finding regarding it. Subsequently, Defendant filed her bankruptcy petition and listed Plaintiff as a creditor. Plaintiff reacted by filing the instant adversary proceeding.

In this case, Plaintiff argues that Defendant acted to injure her willfully and maliciously in connection with the harassment that formed the basis of the state court judgment. According to Plaintiff, 11 U.S.C. 523 § (a)(6) precludes discharge of Defendant's debt to her. Defendant posits that there is no evidence she acted willfully and maliciously toward Plaintiff. Defendant argues, instead, that her state court liability was vicarious and not the result of her directly harassing or otherwise behaving willfully or maliciously toward Plaintiff.

2

The parties agree that during the state court proceeding they presented and argued all available evidence relevant to the issues before this Court. Accordingly, the parties requested this Court decide the pending motions based on the evidence presented at the state court trial, without additional evidentiary hearings or a trial. Accordingly, the Court reviewed the state court trial proceedings in total and makes the following findings regarding the evidence presented there.[1]

Per Plaintiff's testimony in the state court trial, she had limited interactions with Defendant during her time working at the bar. One of those involved a brief, in-person meeting during which Plaintiff did not mention the harassment she was suffering. The other was a telephone call. That call, which apparently occurred very shortly before Plaintiff's employment ended, represents the only alleged communication Plaintiff had with Defendant about the conduct of Defendant's son.

Per her trial testimony, Plaintiff did not offer substantial details about the harassment during that telephone call with Defendant. According to Plaintiff, Defendant's response was that she would address the issue. The call was short and did not constitute an involved discussion about the behavior of Defendant's son. According to Defendant, she called Plaintiff to offer her more stable full time employment. Plaintiff did not immediately accept this offer because she was concerned about the impact this employment and the attendant increase in income would have on her benefits.

The evidence at trial also established that the bar used a video surveillance system and Defendant admitted she was familiar with and used that system. However, Plaintiff presented no evidence suggesting Defendant ever witnessed, in person or via video, her son harassing Plaintiff or engaging in any other improper conduct toward Plaintiff. Plaintiff also did not present evidence

---

[1] The parties agreed that the most cost effective method to allow this Court a review of the state court proceedings was the production of a DVD of the proceedings and briefs of each party identifying relevant portions of the DVD.

contradicting Defendant's testimony that she used the surveillance system primarily as a loss-prevention tool and never saw any improper conduct by her son.

Most of the other trial witnesses were Plaintiff's former co-workers at the bar. These individuals offered no evidence that Defendant acted willfully or maliciously toward Plaintiff. None of them had knowledge of Defendant ever being present while her son harassed Plaintiff. None of them testified that they told Defendant her son was engaging in such conduct toward Plaintiff. One of the former co-workers testified that he once saw Defendant's son improperly touch Plaintiff, but he did not testify that Defendant was present for or otherwise knew of that incident. Some of the Plaintiff's former co-workers testified that Plaintiff told them about her phone call with Defendant, but none of them listened to the call or had first-hand knowledge of any discussion between the parties. In short, these witnesses provide no support for Plaintiff's claim that Defendant acted intentionally, willfully, or maliciously toward her.

The trial evidence also indicates that Defendant was not the person responsible for firing Plaintiff. Defendant claims her son made that decision, and Plaintiff concedes it was Defendant's son who sent her a text message telling her to "find a new job." Defendant's son testified to the contrary, claiming it was not his decision to fire Plaintiff. However, the Court has reviewed the trial video and puts little value in the words of Defendant's son. During the trial he argued with the judge, played semantics games with opposing counsel, and almost certainly lied multiple times. Defendant's son was not a credible witness and the Court cannot give weight to his testimony. Accordingly, based on the evidence before it, the Court finds that Defendant did not make the decision to fire Plaintiff–her son did.

Discussion

A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable, in its entirety, to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056.  Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

B.   Law and Analysis

Each party has filed a motion for summary judgment in this case, each arguing that no genuine issue of material fact remains contradicting her position.  According to Plaintiff, the evidence offered at the state court trial proves Defendant engaged in intentional, willful, and

5

malicious conduct toward her.[2] Thus, Defendant's debt to her should not be discharged. According to Defendant, the state court evidence established the opposite. The Court agrees with Defendant, finding that no genuine issues of material fact remain regarding Plaintiff's allegation that Defendant acted intentionally, willfully, or maliciously toward her in connection with the debt at issue.

Plaintiff bases her argument on 11 U.S.C. § 523 (a)(6). Section 523(a)(6) authorizes a bankruptcy court to preclude discharge of "any debt for willful and malicious injury by the debtor to another entity or the property of another entity." Like all exceptions to discharge, a court must narrowly construe an exception under § 523(a)(6) in favor of the debtor. *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing a court must "construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).

A party seeking relief under Section 523(a)(6) must prove by a preponderance of the evidence that a debtor acted both willfully and maliciously to injure her. *Grogan v. Garner*, 498 U.S. 279 (1991). An act is "willful" for purposes of § 523(a)(6) if the actor desires not only the act itself but the injury resulting therefrom. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). As the Sixth Circuit explained, this requires the actor either to desire the consequences of her act or to believe those consequences are substantially certain to result from it. *Markowitz v. Campbell*, 190 F.3d 455, 464 (6th Cir. 1999). Conduct is "malicious" when done in conscious disregard of one's

---

[2] In her Motion, Plaintiff asks the Court to apply res judicata to the trial court decision. The Court has concerns about whether res judicata would be appropriate here, but need not address those concerns. The parties agreed that the Court should rely on the evidence presented in the state court trial to make its decision here, eliminating the need to discuss res judicata or other forms of estoppel.

6

duties or without just cause or excuse. *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). A court can infer willful and malicious conduct through the circumstances surrounding the alleged injury. *O'Brien v. Sintobin*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000). Here, Plaintiff cannot prove by a preponderance of the evidence that Defendant acted intentionally, willfully, or maliciously.

The Court finds Plaintiff suffered sexual harassment at the hands of Defendant's son. What Plaintiff endured is unacceptable and cannot be justified, and the Court hopes she never has to suffer through anything similar again. But the egregious nature of the conduct of Defendant's son is not enough to preclude discharge of Defendant's debt to Plaintiff. That debt only survives if Plaintiff can prove that Defendant herself acted willfully and maliciously.

It is clear the Defendant did not directly harass Plaintiff, sexually or otherwise. Defendant's son engaged in that conduct. Thus, the Court must consider whether Defendant acted in some other willful and malicious manner by unjustifiably ignoring her son's behavior, condoning or encouraging that behavior, or firing Plaintiff without cause. Additionally, Plaintiff must prove that Defendant did one of these things with the intent that Plaintiff would suffer injury as a result. Plaintiff cannot meet that burden.

There is no evidence Defendant ever witnessed her son harassing or acting improperly toward Plaintiff. Defendant testified that she sometimes watched the bar's video surveillance system but never saw her son treat Plaintiff improperly. Plaintiff did not contradict this testimony. More importantly, Plaintiff admitted she only mentioned the harassment to Defendant once, during a phone call. Plaintiff concedes that during that phone call she did not convey substantial detail regarding the situation. Furthermore, according to Plaintiff, Defendant was not dismissive of her

7

situation but told her she would address it. While Defendant disputes this conversation, assuming Plaintiff's recollection is true, it indicates that Plaintiff expressed her concerns and Defendant listened and pledged to deal with the problem.[3]

Furthermore, nobody else who testified at trial offered first-hand knowledge of Defendant witnessing or otherwise being aware of her son's conduct toward Plaintiff. Plaintiff provided no documentary or other non-testimonial evidence from which the Court can infer that Defendant knew how her son was treating Plaintiff. Thus, the above-referenced phone call is the only evidence suggesting Defendant knew anything about her son's conduct toward Plaintiff, and that call came near the very end of Plaintiff's employment at the bar.

Plaintiff also reminds the Court that Defendant was the bar owner and her son's superior and imputes knowledge to her based on those facts. The Court cannot make that same inference. No employer or supervisor can know of every action taken by her employees. This is especially true of destructive actions, like sexual harassment, that the offending employee is motivated to hide. While Defendant's position alone exposed her to liability under Elliot-Larsen, it does not singularly expose her to the exceptions of § 523(a)(6).

To satisfy that provision Plaintiff must prove, by a preponderance of the evidence, that Defendant acted willfully and maliciously. On the record before the Court, Plaintiff cannot meet that burden. She cannot prove by a preponderance of the evidence that Defendant directly harassed Plaintiff or willfully or maliciously ignored her son's harassment of Plaintiff. Plaintiff also cannot

---

[3] It is unclear how soon after this phone call Plaintiff's employment ended, but it seems the two events happened in very close proximity. If Plaintiff's employment ended almost immediately after her phone call with Defendant (and assuming Defendant was not responsible for the termination), Defendant would not have had time to address the situation. She could not, then, be held responsible for failing to fix the situation as she had no time to do so.

prove that Defendant condoned or encouraged her son's conduct or otherwise intended to injure her in connection with the subject debt. Therefore, the only remaining avenue of relief for Plaintiff is to prove Defendant acted willfully or maliciously with regard to Plaintiff's termination of employment.

Plaintiff cannot prove that either. The evidence before the Court indicates the Defendant was not responsible for the decision to terminate Plaintiff's employment. Defendant testified that her son made the decision to fire Plaintiff. Her son contradicted that testimony, but he was a poor witness with no credibility. Considering the totality of the evidence, the Court finds he acted on his own when he terminated Plaintiff's employment.

This is supported by the fact that it was the son, not the Defendant, who sent a text message to Plaintiff telling her to find a new job. Furthermore, Defendant was not Plaintiff's direct supervisor, her son was. Her son was responsible for managing Plaintiff. Plaintiff admitted she only interacted with Defendant twice during her entire employment at the bar. Thus, Plaintiff cannot prove by a preponderance of the evidence that Defendant was involved in her termination and, therefore, cannot prove that Defendant acted willfully and maliciously regarding it.

The Court is troubled by the failure of Defendant to reverse her son's decision to terminate Plaintiff's employment after her telephone conversation with Plaintiff. Viewed narrowly, the sequence of Plaintiff's complaint of harassment followed by termination of employment could support a Section 523(a)(6) claim. Viewed in context, however, Plaintiff's non-committal response to Defendant's offer of more work and more income could have led Defendant to conclude that Plaintiff did not want to work at the bar for reasons unrelated to harassment. This argument was not advanced at the state court trial or with this Court. After carefully considering the record and

9

15-03137-dof    Doc 31    Filed 08/12/16    Entered 08/12/16 14:03:01    Page 9 of 11

arguments, the Court concludes that this set of facts, while troubling, is not sufficient to support Plaintiff's Section 523(a)(6) claim.

Plaintiff's other efforts to support her claim that Section 523(a)(6) precludes discharge fall similarly short. Plaintiff argues that the jury found the Defendant acted intentionally and equates that to a finding of willful and malicious conduct. However, the jury verdict form does not reflect a finding that Defendant acted intentionally. The form simply notes Defendant's legal responsibility for the damage Plaintiff suffered from being harassed. Employer liability under Elliot-Larsen does not require a jury or court to determine the employer took affirmative action against the employee at issue. Instead, a jury can hold an employer vicariously liable for violating an employee's civil rights solely because she is the employer. The Court finds that is what happened here. Defendant was liable because she owned shares in a corporation that owned a bar which employed Plaintiff and because she was a supervisor of her son who acted improperly as to Plaintiff, not because she engaged in any willful, malicious, or otherwise direct conduct. This is consistent with Michigan law, which allows a jury to hold an employer vicariously liable for sexual harassment, under Elliott-Larsen, without showing that the employer herself was at fault. *Chambers v. Trettco, Inc.* 463 Mich. 297, 312-13 (Mich. 2000).

Plaintiff references the state court opinion denying Defendant's motion for judgment notwithstanding the verdict as well. That opinion also suggests Defendant was liable only vicariously. It does not confirm a jury finding that the Defendant acted intentionally, wilfully, or maliciously toward Plaintiff. In fact, it does not discuss any specific willful or malicious conduct by Defendant. The only conclusion this Court can draw is the jury held Defendant liable because she was Plaintiff's employer, not because she acted willfully and maliciously toward Plaintiff.

Finally, the Court cannot infer from the totality of the circumstances that Defendant acted willfully and maliciously. Instead, an objective view suggests Defendant did not know how her son was treating Plaintiff until, at the earliest, a phone call that occurred just before Plaintiff's employment ended. Could Defendant have done a better job monitoring the workplace? Perhaps. But at worst Defendant was negligent in supervising her son, and negligence is not enough to satisfy Section 523(a)(6). *Jennings v. Jennings*, 188 B.R. 110, 113-14 (E.D. N. Y. 1995).

For all of these reasons, the Court holds that no genuine issues of material fact remain regarding Defendant's alleged willful and malicious treatment of Plaintiff; Plaintiff cannot prove by a preponderance of the evidence that Defendant engaged in willful and malicious conduct regarding the debt at issue; Plaintiff's Motion for Summary Judgment is DENIED; and Defendant's Cross-Motion for Summary Judgment is GRANTED. The Court directs Defendant to prepare an Order consistent with this Opinion and the presentment of order procedures of this Court.

**Not for Publication**

```
Signed on August 12, 2016
                                        /s/ Daniel S. Opperman
                                    Daniel S. Opperman
                                    United States Bankruptcy Judge
```